## SCOTTISH-AMERICAN MTG. CO. v. CLOWNEY.

1. TRUSTEE.—Deed by trustee under power of sale for reinvestment without payment to trustee of purchase money is voidable, but not void.

2. IBID.—NOTICE—ATTORNEYS.—Knowledge on part of an attorney that
a trustee is selling to his own wife, is notice to his client.

3. IBID.—DEED—CESTUI QUE TRUST.—Sale by husband, trustee, to wife
of trust property, is voidable at option of *cestui que trust.*

Before ALLEN J. GREEN, special Judge, Fairfield, Janu-
ary, 1904.   Modified.

Action by Scottish-American Mortgage Co. v. Margaret
M. Clowney, Blanch N. Stewart, I. R. Law and Boyd C.
Clowney.   The Circuit decree is as follows:

"This action was commenced May 7th, 1901, and is
brought by the plaintiff against the defendants for the pur-
pose of removing a cloud upon its title, and failing therein
to be subrogated to the rights of an alleged purchase money
mortgage, .which it is alleged was paid with its money.
The defendant, M. M. Clowney, made default; the other
defendants, who are the children of W. J. Clowney, the
beneficiaries under the trust deed hereinafter mentioned,
answered, the last named, Boyd C. Clowney, an infant, by
his guardian *ad litem.*

"The cause was referred to James G. McCants, Esq.,
referee, to take the testimony upon the issues raised by the
pleadings, and came on to be heard before me at the special
November term, 1903, of the Court of Common Pleas for
Fairfield County, upon the pleadings and testimony so taken.

"There is no controversy as to the facts; the issues raised
and argued are as to the proper conclusions to be drawn
from the facts and the principles of law applicable thereto.

"The facts are as follows: On the 1st of January, 1877,
Samuel B. Clowney, by his deed dated on that day, reciting
'in consideration of the sum of $2,500, secured to be paid
to me by William J. Clowney, trustee,' conveys with full
warranty to said 'W. J. Clowney, as trustee, his successors
or assigns,' a tract of land in Fairfield County, fully de-
scribed therein, containing 649 acres, more or less, in trust:
'to and for the use, benefit and behoof of the children of the
said William J. Clowney now living, and of them which

may hereafter be born and living at the time of the death of the said William J. Clowney; and if all of the children of the said William J. Clowney shall die in his lifetime, leaving no issue, or if he shall die without leaving an issue living at the time of his death, then it is agreed by and between the parties to these presents that said tract of land shall revert to the said Samuel B. Clowney, his heirs and assigns forever, discharged and free from all trusts whatsoever; and the said William J. Clowney is hereby authorized and empowered to sell or otherwise dispose of the said tract of land whenever, in his judgment, it may be expedient for his said children, and to reinvest the proceeds upon the same trusts and subject to like reversion to the said Samuel B. Clowney, his heirs and assigns forever, as is hereinbefore provided as to said tract of land.'

"On the *same* first day of January, 1877, the said W. J. Clowney, as trustee, mortgaged the said premises to the said Samuel B. Clowney to secure his bond of even date, conditioned to pay $2,500 in one, two and three equal annual instalments, computing from date, with interest at ten per cent. per annum, payable annually, until the whole debt and interest be paid. After the description of the premises in the mortgage appears these words: 'and being the same tract of land as was conveyed to me as trustee by the said Samuel B. Clowney by deed bearing even date with these presents.'

"The deed and mortgage is witnessed by the same witnesses, probated by the same officer, on the 8th day of February, 1877, and recorded the same day.

"The bond and mortgage were assigned to Smythe & Adger by S. B. Clowney on the 17th day of March, 1877, and by them to George W. Witte on the 6th day of February, 1878.

"On the 26th of April, 1886, proceedings were commenced to foreclose the said mortgage by an action in which George W. Witte was plaintiff and William J. Clowney, as trustee, alone was defendant. This action proceeded to judgment for foreclosure and sale of the premises, the

amount found due being $2,131.58, with interest from September 22, 1886, and $50 costs, and was docketed accordingly on the 8th day of October, 1886, in the proper office.

"In the meantime, pending this action, to wit: on the 9th of August, 1886, William J. Clowney, trustee, executed a deed conveying the said premises to his wife, M. M. Clowney, subject to the above mortgage, which deed was probated and recorded on September 16th, 1886. This deed purports to be made 'in consideration of the sum of $3,700, in hand paid at and before the sealing of these presents' and 'in pursuance of the power conferred upon me, the said W. J. Clowney, trustee,' by the deed of January 1st, 1877. Before the record of this deed W. J. Clowney handed Mr. H. A. Gaillard an application signed by M. M. Clowney to J. B. Palmer & Son, the investing agents of plaintiff, for a loan of $2,000, offering a mortgage of the premises as security. Mr. Gaillard was the attorney of W. J. Clowney in the Witte foreclosure suit, and also the attorney of J. B. Palmer & Son in negotiating the loan, and forwarded them the application, made the abstract of title, and upon the consummation of the transaction received in checks from them the sum of $1,922.50, the net proceeds of the loan, and applied the same in extinguishment of the judgment of Witte v. Clowney, trustee, on June 27th, 1887; subsequently the balance of the judgment was paid and it was satisfied of record.

"The loan is evidenced by five notes, dated November 15th, 1886, signed by M. M. Clowney and W. J. Clowney, secured by a mortgage of the premises of the same date, executed by Mrs. M. M. Clowney alone; the mortgage was recorded on the 28th of January, 1887. On September 29th, 1894, the mortgage was foreclosed, and the premises sold under the proceedings on Novemberr 5th, 1894, and bought by the plaintiffs, who received the deed therefor, and have been in possession since.

"The *cestui que trustents* under the trust deed were not made parties to either of the foreclosure proceedings. At

the reference, Mrs. M. M. Clowney testified, under objection of plaintiffs' counsel, that she had no knowledge of any deed to her of the premises—did not know that there was such a deed—that no money passed to her from Mr. Clowney, nor from the mortgage company to her.   She did not know that she was the owner of the land; never claimed the land or exercised any acts of ownership over it, and never had anything to do with getting money from plaintiffs.

"The mortgage was folded down and she signed where directed; did not read it or know what was in it, and could not see from the manner in which it was folded.

"W. J. Clowney, the trustee, died March 12th, 1903, leaving the last three named defendants, his living children. These have answered, the two adults setting up five defenses as follows:

" '1. Under the trust deed, the trust was a naked trust, and the statute executed the title in them, and plaintiff has no title.'

" '2. That they not having assented to the mortgage of W. J. Clowney to Samuel B. Clowney, the same is void for lack of power in the trustee to make.'

" '3. That said bond and mortgage, if valid, has been foreclosed and the judgment satisfied in full.'

" '4. That the deed of W. J. Clowney, trustee, is void for want of power as a breach of trust of which the grantee had full notice.'

" '5. That the notes and mortgage of M. M. Clowney to plaintiff from the foreclosure of which plaintiff derives title, were taken by plaintiff with full notice of the breach of trust on the part of W. J. Clowney, trustee, as aforesaid.'   And ask for the recovery of the land and an accounting by the plaintiffs for the rents and profits thereof since January 1st, 1895.

"The trust under the deed of 1877 is not a naked trust; under the deed, the trustee had power to sell; this under the authorities is sufficient to prevent the operation of the statute.   *Carrigan* v. *Drake,* 36 S. C., 355.   It is equally clear

under the authorities in this State that the power to sell for reinvestment contained in the deed does not include the power to mortgage, as said by McIver, C. J., in *Allen* v. *Ruddill,* 51 S. C., 366; such power to sell for reinvestment negatives the power to mortgage, citing *Salinas* v. *Pearsall,* 24 S. C., 184. But I think the circumstances in relation to the bond and mortgage by W. J. Clowney, trustee, to Samuel B. Clowney, coupled with the fact that there is an entire absence of testimony to show that W. J. Clowney ever had any trust funds in his hands impressed with the trust mentioned in the deed, shows unmistakably that this transaction was the creation of the trust and the mortgage was given to secure the purchase money, and hence it falls within the principle of *Elliott* v. *Mackorell,* 19 S. C., 238, and cases there cited. It follows, therefore, that the mortgage was a valid lien upon the premises paramount to the interest of the *cestui que trustents.*

"The testimony of Mrs. Clowney is competent; it is always competent to show that the consideration expressed in a deed was not, in fact, paid; and even the grantors may maintain an action to recover it, notwithstanding his deed. 2 Whart. Ev., No. 1042; besides, the object of the testimony was to show a breach of trust, a fraud upon the beneficiaries under the deed; and the charge of fraud renders competent all testimony necessary to sustain it. *Burch* v. *Brantley,* 20 S. C., 503. This testimony is uncontradicted, and clearly shows that the transaction evidenced by the deed to Mrs. Clowney to plaintiff was an attempt on the part of the trustees to mortgage the trust property; that the alleged execution of the power of sale for reinvestment was pretentious, and no money ever passed to or was received by the trustee, and I hold the deed is absolutely void; the deed being void, is a nullity and carries with it the mortgage of plaintiff and his title under the foreclosure based thereon, for no amount of lack of notice can vitalize a nullity. In my view, it is, therefore, unnecessary to decide the question of notice, for conceding the plaintiffs to be without notice, the

defendants are entitled to all the relief that the equities of the case would warrant.    There are no intervening incumbrances.    The case is thus—the trust estate is subject to the payment of the Witte judgment.    The corpus to which the beneficiaries are entitled is and never has been more than the difference between the incumbrance and the value of the land.    The plaintiffs lent their money on the faith of the deed of the trustee to Mrs. Clowney, which, as we have seen, is void, and have become the purchasers of the premises under a foreclosure sale, based upon a mortgage by Mrs. Clowney, which is also void, because based on the deed.

"The testimony shows that $1,922.50 of the money lent was applied in extinguishment of the paramount lien.    This, I think, brings the case within the principles of *Farr* v. *Simms,* Rich. Eq. cases, 133, wherein it is said: 'That although a third person should not be punished for the fraud of another, he shall not avail himself of it * * * By setting up his purchase under a fraudulent sale to the detriment of the complainant.'    And of *Hunter* v. *Hunter,* 63 S. C., 63, where, says the Court: 'The doctrine of subrogation as applicable to this case rests upon the principles that where persons have in good faith bought the lands of decedent, and it turns out that the sale is void for want of authority to make it, then as a matter of equity and good conscience those who have purchased the property have a right to retain the property until the amount of the purchase money paid by them which has been applied to the removal of burdens resting on such property shall be refunded to such purchasers.'

"Therefore, plaintiffs cannot maintain their title acquired at this sale against the defendants, but are entitled to be subrogated to the Witte judgment to the extent of $1,922.50, the amount of their money, the testimony shows, was applied in extinguishment of it.

"The plaintiffs have been in possession of the land under their purchase under the foreclosure of their mortgage, which, as we have seen, is void, and are accountable for the

rents and profits received by them from the land since their occupancy. A statement of rents, taxes and insurance received and paid by the plaintiffs is in evidence, and there is also some testimony tending to show that they have cut and sold timber from the land during their occupancy which may amount to waste, and if so should be accounted for; the case, therefore, will be referred back to the referee, to take testimony and state the account between plaintiff and defendants, and to report the amount, if any, and to whom the same is due.

"It is, therefore, ordered, adjudged and decreed, that the defendants are entitled to recover the possession of the premises described in the complaint from the plaintiffs, upon the payment to them of the amount that may be found to be due to them upon the statement of account herein ordered:

"Further ordered, that it be referred to J. G. McCants, Esq., as referee, to take the testimony and state the account between the plaintiff and defendants, under the principles announced in *Givins* v. *Carroll,* 40 S. C., 414, charging the defendants with the sum of $1,922.50, as of November 5, 1894, the date of the deed from Jennings; and upon the coming in of his report either party has leave to apply to the Court for such further orders as may be necessary to carry this decree into effect.

"The costs of this action to be paid by plaintiff."

From Circuit decree, plaintiff and three last named defendants appeal.

*Mr. A. S. Douglass,* for plaintiff, cites: *Deed of trustee to wife is not absolutely void:* 19 Am. St. R., 267; 1 Strob., 45; 45 L. R. A., 66; Bish. on Con., secs. 611, 672, 673; 14 S. C., 321; 2 Perry on Trusts, secs. 828, 830; 36 S. C., 365; 29 S. C., 136; 1 Perry on Trusts, secs. 300, 305. *Recitals as to considerations in deeds are prima facie true:* 25 S. C., 521; 26 S. C., 167; 38 S. C., 397; 18 S. C., 493; 1 Green.

Ev., secs. 23, 26; 2 Hill, 404; 1 McC., 514; 53 S. C., 487. *Plaintiff had no notice of breach of trust:* 6 S. C., 159; 23 S. C., 494; 17 Am. R., 288; 31 Grat., 149; 60 S. C., 172; 61 S. C., 265; 2 Dev. on Deeds, sec. 1009; 130 Mass., 52; 34 S. C., 540; 22 S. C., 339; 24 S. C., 48; 9 Rich. Eq., 217; 2 Hill, 405; 2 Perry on Trusts, sec. 602; 2 John. Ch., 271; 24 S. C., 281. *Margaret M. Clowney is estopped by the judgment of foreclosure against her:* 1 Hill Ch., 22; 19 S. C., 247; 24 S. C., 402. *Want of consideration, fraud, &c., must be affirmatively pleaded:* 53 S. C., 483; 58 S. C., 125.

*Mr. W. D. Douglass,* also for plaintiff, cites: *Deed of trustee is only voidable:* 19 Am. St. R., 266; 28 Ency., 478; 13 Burr., 1794; 19 Am. D., 187; 6 Cranch, 133; 18 Am. Dec., 760; 2 Pick., 184; 61 S. C., 265; 60 S. C., 177; 13 Am. Dec., 406; 109 U. S., 511; 23 S. C., 500. *In absence of notice to plaintiff, evidence of Mrs. Clowney is incompetent:* 59 S. C., 564; 52 S. C., 155; 53 S. C., 488; 79 Ill., 79; 55 S. C., 28. *Fraud must be specially pleaded:* Boone Code, 148; Bliss Code, 211; 1 L. R. A., 644; Pom. Rem., 687, 709, 708, 687. *Mortgage foreclosed by Witte was valid lien on land:* 19 Ency., 575; 2 S. C., 230; 19 S. C., 241; 8 S. C., 40; 11 S. C., 35; 60 S. C., 182; 50 S. C., 127; 75 Va., 407. *One paying valid lien on request is in position of assignee:* 32 N. J. Eq., 103; 35 Kan., 500; 48 Wis., 198; 64 Md., 465; 167 U. S., 700; 37 Mich., 82; 32 N. J. Eq., 133; 58 Miss., 68; 24 Ency., 292-7; 18 S. W., 225; 33 Kan., 353; 39 Ia., 657; 58 Md., 395; 32 N. J. Eq., 103; 64 Md., 465; 9 Allen, 24; 3 Vt., 212; 57 Am. R., 190; 26 S. C., 33; 30 L. R. A., 833; 29 S. C., 501.

*Messrs. Buchanan & Hannahan* and *J. E. McDonald,* for defendants, cite: *Requisites to sustain the plea of purchaser for value without notice:* 14 S. C., 318; 28 S. C., 58; 34 S. C., 564; 27 D. C. R., 66. *Trustee cannot sell trust property to his wife:* 2 Johns. Ch., 256; 57 N. Y., 471; 64 Penn. St., 325; 46 N. J. Eq., 538; 1 Perry on Trusts, 231; Kerr

on Frauds, 159; 41 Law., 503. *Plaintiff had notice and is not a bona fide purchaser for value without notice, and is, therefore, not entitled to subrogation:* 2 Perry on Trusts, 768; 37 N. Y., 581; 18 Ency., 2 ed., 940; 51 S. C., 374; 58 S. C., 554; 52 S. C., 464; 51 Am. Dec., 428; 11 S. C., 551; 24 S. C., 179; 29 S. C., 278; 51 S. C., 374; 1 S. C., 394; 5 Rich. Eq., 270; 3 Hill, 361; Code of Proc., 132; Bail. Eq., 395; 20 S. C., 71; 22 S. C., 328; Wiltsie on For., 120; Story Eq. Plead., 207; 24 S. C., 398; 66 S. C., 193; Speers Eq., 41; 1 A. & E. D. in Eq., 493; 163 Pa. St., 600; 51 S. C., 506; 34 S. C., 377; 29 S. C., 508; 58 S. C., 178; Rich. Eq. Ca., 133; 63 S. C., 78.

November 24, 1904. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts of this case are fully stated in the decree of his Honor, the special Judge, which will be set out in the report of the case. This Court is satisfied with the conclusions announced in the Circuit decree, except that in the matter of the $1,922.50 applied to the extinguishment of the judgment of *Witte* v. *Clowney,* the interest should be calculated from the 27th of January, as the record shows that the money was applied to the satisfaction of the judgment on that day, instead of the time mentioned in the decree. The reasons for our concurrence are, however, not the same in all respects as those upon which the special Judge bases his conclusions, as will hereinafter be shown.

The pleadings raise the question whether the plaintiff was a purchaser of the land for valuable consideration without notice of such facts as rendered its title null and void. A plaintiff as well as a defendant may assert this right. *McGee* v. *Jones,* 34 S. C., 146. The Circuit Judge finds as a fact that the transaction evidenced by the deed to Mrs. Clowney and the mortgage to the plaintiff was an attempt on the part of the trustee to mortgage the trust property,

and that the alleged execution of the power of sale for re-investment was pretentious, and no money was received by the trustee. After thus finding, he says: "I hold the deed is absolutely void; the deed being void, is a nullity and carries with it the mortgage of plaintiff and his title under the foreclosure based thereon, for no amount of lack of notice can vitalize a nullity. In my view, it is, therefore, unnecessary to decide the question of notice, for conceding the plaintiffs to be without notice, the defendants are entitled to all the relief that the equities of the case would warrant. There are no intervening incumbrances."

The first exception assigns error in the ruling that the deed to Mrs. Clowney was absolutely void, and as a nullity carries with it the plaintiff's mortgage and the title based thereon under the foreclosure proceedings. The authorities cited in the argument of the plaintiff's attorneys fully sustain the position that the deed was not absolutely void, but only voidable. This exception should be sustained.

The third exception assigns error in not finding that the plaintiff did not have notice of any breach of trust on the part of the trustee or Mrs. Clowney, which affected the validity of the deed executed by the trustee to Mrs. Clowney. The defendant's attorneys served notice that they would ask this Court to sustain the decree in this respect upon the additional ground "that it was contrary to the law and public policy and a breach of trust on the part of Wm. J. Clowney, trustee, to execute a deed of trust property to his wife, the said Margaret M. Clowney, of all of which facts the plaintiff had notice before, and at the time of taking its mortgage from the said Margaret M. Clowney."

The plaintiff's attorneys contended that the deed of W. J. Clowney, trustee, to Margaret M. Clowney, does not show on its face that the grantee was the wife of the grantor, and the fact that she was his wife cannot affect plaintiff's rights as a mortgagee or purchaser for valuable considera-

tion without notice.   It is, however, a fair and reasonable
inference from the testimony that H. A. Gaillard, the plain-
tiff's attorney, had notice that Mrs. Clowney was the wife
of the trustee, especially as it appears in the record that he
was a subscribing witness to the execution of this deed.
Knowledge of this fact on the part of the attorney is
attributed as notice to his principal, the plaintiff herein.
*Blackwell* v. *Mortgage Co.,* 65 S. C., 105.

We are thus squarely confronted with the solution of the
proposition whether the conveyance of the land by the trus-
tee to his wife was in itself a breach of trust which public
policy demands should have the effect of rendering
the transaction voidable.   The authorities are in
accord as to the general principle that a trustee can-
not buy at his own sale.   The doctrine, with its limitations,
is clearly stated in *Anderson* v. *Butler,* 31 S. C., 183.   The
Court says: "It is a well established principle that a trustee
cannot buy at his own sale.   He cannot be vendor and ven-
dee at the same time of trust property; that is, he cannot
make a binding contract with himself in the purchase of
the trust property under his control.   On the contrary, all
such purchases are subject to be vacated and set aside by
the *cestui que trust* at his option, and this, too, without
regard to the fact, whether such purchase was made in good
faith, at full price, or was fraudulent and delusive.   This
doctrine has been long settled, both in England and in this
country, and it is a wise and wholesome principle.   It strikes
at once at the root of danger, and destroys it.   It removes
from the trustee the temptation to do wrong and guarantees
the faithful execution of his trust in the sale of the property
of his *cestui que trust.*"

Does a sale by the trustee to his wife of the trust property
come within the spirit of this principle, which strikes at the
root of danger and removes the trustee from temptation to
sell the property in such a manner that he will thereby
receive a benefit either directly or indirectly?   The husband
and the wife sustain towards each other a highly confidential

and fiduciary relation; and transactions between them are to be scrutinized with great jealousy, especially when it is made to appear that advantage was taken of the wife. *Way* v. *Ins. Co.,* 61 S. C., 501. So sacred is this relation, that acts which would be *champertous* between third parties are not violative of law as between husband and wife. In *Ex parte Hiers,* 67 S. C., 108, this question of champerty was considered, and this Court said: "In many respects the husband and wife are still regarded as one in law. It would be against public policy for the Courts to hold that when a dutiful and confiding wife renders her husband financial aid in securing those rights accorded to him by law, she should be held to be guilty of champerty." As a rule, the husband expects and realizes a pecuniary benefit either directly or indirectly from property acquired by the wife.

This question as to the right of the trustee to sell the trust property to his wife, although new in our State, has been adjudicated elsewhere. In *Bassett* v. *Shoemaker,* 46 N. J. Eq., 538 (reported in 19 Am. Stat. Rep., 435), it was held that where a trustee sells the trust estate to one who, by previous agreement, purchases for the wife of the trustee, the sale will be set aside on the application of a *cestui que trust,* nor is evidence that the sale was fair and for the best price obtainable admissible. Also, that where a husband sells as trustee, his wife is excluded from purchasing at the sale directly from him. If she desires to become a purchaser, she must apply to the Court and obtain an order that the sale be conducted by and under the supervision of a master. The Court says: "The exclusion of the wife as a purchaser, where the husband sells as a trustee, is not so much for the reason that he may subsequently become entitled to some interest in her lands, as on account of the unity which exists between them in the marriage relation. The case falls clearly within the spirit of the principle, which excludes the husband himself." The Court quotes as follows, from the case of *Romaine* v. *Hendrickson,* 27 N. J. Eq., 162: "So jealous is the law of the interest of the *cestui*

16—70.

*que trust* that it will not tolerate the slightest antagonism on the part of the trustee.    The object of the rule is to prevent the trustee from using his information and power to the prejudice of the *cestui que trust.*"    See, also, *Davoue* v. *Faning,* 2 Johns. Ch., 251; *Michoud* v. *Girod,* 4 How. (U. S.), 503; and 1 Perry on Trusts, Section 195.    This doctrine, so wholesome in its nature, grows out of the principles of equity, and is not affected by the laws of our State relating to the rights and powers of married women.    We are the more willing to apply these principles to the case under consideration, as the effect is to bring about substantial justice to all parties concerned; the sale made in breach of the trust is thus avoided, and the plaintiff is enabled to get back its loan with interest.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, except in the particular hereinbefore mentioned, and that it be modified in that respect.